UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 10-24517-CIV-HUCK/BANDSTRA

DENNIS J. McARTHUR,

    Plaintiff,

v.

NORTHSTAR FUNERAL SERVICES OF
FLORIDA, LLC, d/b/a LEVITT-WEINSTEIN
MEMORIAL CHAPEL, a foreign for-profit
corporation,

    Defendant.

_____/

**ORDER DENYING MOTION TO DISMISS; REQUIRING SUBMISSION**

THIS MATTER is before the Court on Defendant Northstar Funeral Services of Florida, LLC's Motion to Dismiss Count II of Plaintiff Dennis J. McArthur's Complaint. Because McArthur has alleged sufficient facts to state a claim for retaliation that is plausible on its face, Defendant's Motion to Dismiss is DENIED.

**FACTUAL BACKGROUND**

Dennis J. McArthur, a Black male of African-American descent, brought this action against his former employer, Northstar Funeral Services of Florida, LLC ("Northstar"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. In Count I of his complaint, McArthur alleges that Northstar intentionally discriminated against him. McArthur contends that, while employed as a funeral director and embalmer, he was paid less than similarly situated non-Black co-workers, and he was expected to complete certain assignments by himself, even though a team of co-workers typically performed such assignments. McArthur claims that he was disciplined more harshly and unfairly than non-Black employees, noting, for example, that he received a written

1

warning for using a wrong casket when other non-Black employees were not given warnings for similar mistakes, and that Michael Blasberg, a non-Black Northstar employee, gave him a verbal warning for wearing a cell phone earpiece while Blasberg himself was wearing an earpiece. McArthur also states that Blasberg would scream, yell, and use profanity with him in front of his co-workers. McArthur further alleges that Blasberg would not allow him to perform certain tasks that other similarly situated non-Black employees performed, such as interacting with a decedent's family, and that he was denied benefits, such as paid time off, vacation, and leave for doctor appointments, that non-Black employees received. McArthur alleges that he complained about being harassed by Blasberg because of his race, but Northstar took no action. When McArthur asked Joseph Zaffiro, another Northstar employee, why Blasberg was harassing him, Zaffiro replied: "because you're Black."

In Count II of his complaint, McArthur contends that Northstar unlawfully retaliated against him for reporting the alleged discrimination. McArthur states that on or about March 8, 2008, he called and emailed Northstar's human resources department to report the discriminatory treatment he endured from Michael Blasberg. Receiving no response, McArthur sent a follow-up letter on March 11, 2008. The next day, McArthur received a verbal warning from Blasberg. On March 15, 2008, McArthur sent another email to Mary Opperman of human resources regarding the status of his complaint. On March 19, 2008, McArthur sent a seven-page letter to Opperman detailing and discussing his complaints about Blasberg and noting that Blasberg had attempted to change his regular work hours, even though McArthur explained he needed to leave by 4:30 p.m. to pick up his daughter from school. That same day, McArthur emailed Opperman to request a meeting to discuss his complaints and to request documentation regarding his complaints. McArthur contends that Opperman denied his requests. On June 1, 2008, McArthur was terminated. While Northstar

allegedly terminated him for taking a day off without making prior arrangements with human resources, McArthur claims that his supervisor approved the absence and that Northstar's proffered reason for his termination was in contradiction to, and in violation of, the Employee Handbook.

Northstar now seeks to dismiss Count II of McArthur's Complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that McArthur failed to allege sufficient facts in support of his retaliation claim. Northstar did not move to dismiss Count I.

## LEGAL ANALYSIS

It is well established that to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In the context of a Title VII claim, a complaint "need not allege facts sufficient to make out a classic *McDonnell Douglas* prima facie case" to survive a motion to dismiss. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008). A Title VII complaint must simply "provide 'enough factual matter (taken as true) to suggest' intentional race discrimination." *Id.* (quoting *Twombly*, 550 U.S. at 556).

"Title VII makes it unlawful for employers to retaliate against employees for opposing unlawful employment practices, including racial discrimination." *Bryant v. Averitt Express, Inc.*, 375 F. App'x 942, 943 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-3(a)). To establish a claim of retaliation, a Title VII plaintiff must ultimately prove that "he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *see also*

3

*Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (listing the three elements required to establish a prima facie case of retaliation).  In its Motion to Dismiss, Northstar claims that McArthur failed to sufficiently allege that he engaged in a statutorily protected activity or that there was a causal connection between the alleged protected activity of protesting discrimination and McArthur's termination. Northstar contends McArthur merely "sets forth conclusory statements without any factual support." Motion to Dismiss, (D.E. #4), at 3.  Northstar's arguments, however, are simply without merit.

With respect to its contention that McArthur did not sufficiently allege he engaged in a statutorily protected activity, Northstar's entire argument, as presented in its Motion to Dismiss, consists of the following two sentences:

> Plaintiff asserts that he was retaliated against (i.e., he was terminated) for engaging in a protected activity. (Complaint ¶¶ 11, 28).  However, Plaintiff has failed to allege any facts indicating participation in a protected activity such as testifying, assisting, or participating in any investigation, proceeding, or Title VII litigation for which he purportedly endured an adverse employment action.

*Id.* at 4.  While McArthur does not allege that he testified, assisted, or participated in a Title VII investigation or proceeding, Northstar completely overlooks the remainder of Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), which protects not only those who "participate" in an official Title VII proceeding, but those who "oppose" practices made unlawful by Title VII as well.[1]

---

[1] Title VII's anti-retaliation provision provides, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

Section 2000e-3(a)'s "opposition clause" "protects activity that occurs before the filing of a formal charge with the EEOC, such as submitting an internal complaint of discrimination to an employer, or informally complaining of discrimination to a supervisor." *Muhammad v. Audio Visual Servs. Group*, 380 F. App'x 864, 872 (11th Cir. 2010) (distinguishing the "opposition clause" from the "participation clause," which protects activity related to the filing of formal charges with the EEOC); *see also Fuller v. Broward Cnty. Mass Transit (Office of Transp.)*, No. 08-61016, 2009 WL 112851, at *4 (S.D. Fla. Jan. 16, 2009) ("[A] claim brought under the opposition clause only requires an employee to voice his concerns to superiors about suspected illegal conduct under Title VII; it does not require the initiation of a Title VII proceeding or investigation.").

In his Complaint, McArthur clearly alleges that around March 8, 2008, he placed calls and sent emails to Northstar's Human Resources to report the discriminatory treatment by Michael Blasberg. Complaint, (D.E. #1), at 8. When human resources did not respond, he sent a follow-up letter via certified mail. *Id.* On March 15, 2008, McArthur sent another email to Mary Opperman regarding the status of his complaint against Blasberg. *Id.* On March 19, 2008, he "sent a 7-page letter, via certified US mail, to Mary Opperman detailing and discussing his complaints about Michael Blasberg." *Id.* at 7. McArthur also sent an email to Opperman requesting a meeting to discuss his complaints on that same date. *Id.* at 8. As noted above, it is well-settled that reporting discriminatory conduct to one's employer constitutes a protected activity under Title VII, and McArthur has specifically stated that he reported his grievances on numerous occasions. *See also Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) ("[W]e recognize that the protection afforded by the statute is not limited to individuals who have filed formal complaints, but extends as well to those, like [the plaintiff], who informally voice complaints to their supervisors or who use their employers' internal grievance procedures."); *Shannon v.*

5

*Bellsouth Telecomms., Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002) (Noting that the plaintiff "engaged in protected activity. . . by voicing complaints of discrimination to his supervisors.").

Northstar then argues, for the first time in its Reply, that, "[e]ven assuming a complaint to a company's human resources department constitutes a 'protected activity' under 42 U.S.C. § 2000e-3, in this case, Plaintiff has failed to set forth ultimate facts to support his claim that he engaged in a protected activity." Reply in Support of Motion to Dismiss Count II ("Reply"), (D.E. # 13), at 2. Relying on *Murphy v. City of Aventura*, 616 F. Supp. 2d 1267 (S.D. Fla. 2009), and *Webb v. R&B Holding Co., Inc.*, 992 F. Supp. 1382 (S.D. Fla. 1998), Northstar states that an "employee must, at the very least, communicate [his] belief that discrimination is occurring to the employer. It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred." Reply at 2 (quoting *Murphy*, 616 F. Supp. 2d at 1280) (alteration in original). Northstar then contends that McArthur failed to report any unlawful employment practice to Northstar because, in Count II, McArthur only "alleges that he was discriminated against because his supervisor attempted to change his work schedule" and that he was "terminated for wrongfully taking a day off work." *Id.* at 3-4. Northstar concludes that such complaints cannot constitute protected activity because "[n]owhere in Count II does Plaintiff state that Northstar engaged in racial discrimination; nor does he state that he complained to Northstar's Human Resources department about racial discrimination." *Id.* at 4.

In advancing this argument, Northstar ignores the fact that McArthur devotes Count I of his Complaint to setting forth substantial factual allegations of racially discriminatory conduct, much of which occurred at the hands of Michael Blasberg.[2]  *See supra* pp. 1-2; Complaint, (D.E. #1), at

---

[2] As previously noted, Northstar has not moved to dismiss Count I of McArthur's Complaint.

3-5. While McArthur did not expressly restate or reincorporate the allegations of discriminatory conduct as set forth in Count I into his claim of unlawful retaliation in Count II, a fair reading of the Complaint, as a whole, indicates that when McArthur complained to human resources, as alleged in Count II, he was complaining about the racially discriminatory conduct addressed in Count I. While the letter McArthur sent to Mary Opperman on March 19, 2008, "noted that Michael Blasberg had attempted to change Plaintiff's regular work schedule," there is nothing to suggest that this was the sole act complained of in the seven-page letter "detailing and discussing his complaints about Michael Blasberg." Complaint at 7. Furthermore, in alleging that he "placed calls and sent emails to Defendant's Human Resources to report the discriminatory treatment he endured by Michael Blasberg," it is plain that McArthur is referring to the ***racially*** discriminatory treatment discussed at length in Count I.[3] The Court cannot ignore the prior allegations of racial discrimination set forth in McArthur's Complaint simply because McArthur did not specifically reiterate these allegations in Count II. *See Wiggins v. McHugh*, No. CV 109-142, 2010 WL 1640968, at *3 (S.D. Ga. April 22, 2010) (declining to dismiss a Title VII retaliation claim merely because the plaintiff failed to allege certain facts in the actual retaliation count of her Amended Complaint, where such facts were contained in prior allegations of the Amended Complaint).

Furthermore, Northstar's reliance on *Murphy* and *Webb* is misplaced. While both *Murphy*

---

[3] This reading of the factual allegations in Count II is confirmed by McArthur's Response Memorandum of Law in Opposition to Defendant's 12(b)(6) Motion to Dismiss Plaintiff's Complaint (D.E. # 10). In his response, McArthur states: "Plaintiff's formal complaint to human resources regarding unlawful ***racial*** discrimination against him is a 'protected activity' and Defendant's conduct subsequent to, and in response to, Plaintiff's complaint constitute[s] retaliation." *Id.* at 5 (emphasis added). Out of an abundance of caution, however, McArthur shall submit a more definite statement regarding the nature of the alleged discriminatory treatment reported to Northstar's human resources department, indicating whether the conduct reported was discriminatory treatment based on McArthur's race, and whether the conduct reported was the conduct alleged in Count I of the Complaint.

and *Webb* involve Title VII retaliation claims on which the court ultimately found in favor of the defendants, the court did so on the defendants' motions for summary judgment, not at the motion to dismiss stage. As the court in *Murphy* noted, a "motion for summary judgment should be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 616 F. Supp. 2d at 1272 (quoting Fed. R. Civ. P. 56(c)). Then, based on the fact that the plaintiff, in her deposition testimony, acknowledged that she never characterized her supervisor's conduct as having been sexually hostile or sexually harassing when reporting such conduct to her employer, the *Murphy* court found that the plaintiff's complaints were "not sufficient to notify her employer that she believed that [her supervisor] was sexually harassing her," and the plaintiff's complaints therefore did not constitute protected activity. *See id.* at 1280-81.

At the motion to dismiss stage, however, a court considers only the four corners of the complaint, which simply must provide sufficient facts from which the court can reasonably infer the defendant is liable for the retaliatory conduct alleged. *See Iqbal*, 129 S. Ct. at 1949. Accordingly, a plaintiff's burden at the motion to dismiss stage is different. Indeed, while the court in *Murphy* ultimately granted the defendants' motion for summary judgment because the plaintiff could not actually establish the "protected activity" element of her prima facie case, the court previously found the factual allegations set forth in the plaintiff's complaint sufficient to survive a motion to dismiss. Specifically, the court found that "Plaintiff's allegations that she complained to numerous individuals meets the protected activity requirement," and the court denied the motion to dismiss. *Murphy v. City of Aventura*, No. 08-20603-CIV, 2008 WL 4540055, at *5 (S.D. Fla. Oct. 10, 2008).

While discovery may ultimately reveal that McArthur's claims, like the plaintiff's claims in *Murphy*, cannot withstand a motion for summary judgment, McArthur has sufficiently pled facts

8

alleging that he engaged in a protected activity for purposes of surviving Northstar's Motion to Dismiss. As detailed above, McArthur alleged that he complained about Michael Blasberg's discriminatory treatment to human resources on numerous occasions throughout March of 2008. At the present stage of the litigation, these factual allegations of a protected activity are enough.

Northstar also argues that McArthur fails to sufficiently allege the third element of a claim for retaliation under Title VII—the existence of a causal connection between the protected activity and McArthur's termination. Specifically, Northstar claims that "Plaintiff does not allege any facts to support his claim that his termination was in anyway caused or motivated by Defendant having knowledge of any alleged protected activity of protesting discrimination." Motion to Dismiss, (D.E. #4), at 4. As with Northstar's prior contentions, this argument is without merit.

"The causal link element is construed broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). A plaintiff may demonstrate that the protected activity and the adverse action are not wholly unrelated by showing that the decision-maker was aware of the protected conduct and that there was a close temporal proximity between such awareness and the adverse action. *See Farley*, 197 F.3d at 1337 (finding a seven-week gap between the time plaintiff's supervisors learned of his complaint and his termination sufficient to create a causal nexus for purposes of establishing a prima facie case).

In the present case, McArthur alleges that on March 8, 2008, he placed calls and sent emails to Northstar's human resources department to report Michael Blasberg's discriminatory treatment. Complaint at 8. He sent a follow-up letter on March 11, 2008. *Id.* The next day, McArthur received a verbal warning from Blasberg. *Id.* On March 15, 2008, and on March 19, 2008, McArthur again

9

contacted human resources regarding his complaints about Blasberg. *Id.* at 7-8. On June 1, 2008, McArthur was terminated, allegedly for taking a day off without making prior arrangements with Northstar's human resources department. *Id.* at 8. While an approximate ten-week gap between the protected activity and McArthur's termination may or may not ultimately constitute a "close temporal proximity" in and of itself, McArthur also alleges that Northstar's stated reason for his termination is incongruent with Northstar's employee handbook and with the fact that his request for absence was reported to, and approved by, his supervisor. *See Wiggins*, 2010 WL 1640968, at *4 ("'[A] substantial delay between the protected expression and the adverse action' will not support a claim of retaliation as a matter of law '**in the absence of other evidence tending to show causation**.'" (quoting *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004))) (alteration and emphasis in original). McArthur's allegations, taken as true, are sufficient to raise a plausible inference that Northstar knew of his complaints of racial discrimination and that McArthur was terminated because of such complaints. *See Murphy*, 2008 WL 4540055, at *5 ("The Court also finds that Plaintiff's allegations that she told [her supervisor] to stop his harassment and her allegations that he terminated her for opposing his unwelcome harassment are sufficient to demonstrate a causal link for purposes of Rule 12(b)(6)."); *Luke v. Residential Elevators, Inc.*, No. 4:10-cv-00524-SPM-WCS, 2011 WL 311370, at *3 (N.D. Fla. Jan. 28, 2011) ("Plaintiff alleges that Plaintiff's testimony against Defendant in a lawsuit led to Plaintiff's termination. Plaintiff's retaliation claims meet the low threshold level of sufficiency to survive Defendant's motion to dismiss.") (internal citations omitted).

## **CONCLUSION**

For the reasons stated above, Northstar's Motion to Dismiss Count II of McArthur's Complaint is DENIED. McArthur has sufficiently "nudged [his] claims across the line from

conceivable to plausible," *Twombly*, 550 U.S. at 570, and, accordingly, has properly stated a claim upon which relief can be granted.

In an abundance of caution, however, and as previously noted on page 7, note 3 of this Order, McArthur shall submit a more definite statement regarding the discriminatory treatment reported to Northstar's human resources department, specifying whether the conduct reported was discriminatory treatment based on McArthur's race, and whether the conduct reported in Count II of the Complaint was the conduct alleged in Count I. McArthur shall submit such statement by **Monday, April 25, 2011**. Northstar shall then file its answer within ten days.

DONE and ORDERED in Chambers, Miami, Florida, April 22, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
All counsel of record